IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DANA ALEGRIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, LARRY | § | CIVIL ACTION NO. G-06-0212 |
| WILLIAMS, Individually and in | § | |
| His Official Capacity, and | § | |
| EDDIE KELLY, Individually and | § | |
| in His Official Capacity, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dana Alegria, brings this action for sexual harassment and violation of rights guaranteed by the Fourteenth Amendment to the United States Constitution against defendants, the State of Texas, Eddie Kelly, and Larry Williams, pursuant to Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681, et seq. (Title IX), and 42 U.S.C. § 1983.  Pending before the court are Plaintiff, Dana Alegria's, Motion for Reconsideration of the Memorandum Opinion and Order (Docket Entry No. 41) and Plaintiff's, Dana Alegria, Motion for Default Judgment Directed Against Larry Williams (Docket Entry No. 40).  For the reasons explained below, plaintiff's motion for reconsideration will be denied, and plaintiff's motion for default judgment will be denied.

## I.  <u>Factual and Procedural Background</u>

Plaintiff originally brought this action for sexual harassment and violation of rights guaranteed by the Fourteenth Amendment to the United States Constitution on April 4, 2006, against defendants County of Galveston, Texas, and Larry Williams, individually and in his official capacity (Docket Entry No. 1).  Plaintiff's original complaint sought compensatory damages, declaratory judgment, and implementation of a policy designed to protect female probationers, attorney's fees, costs of court, and all legal and equitable relief to which she might be deemed entitled.  On June 27, 2006, plaintiff filed her First Amended Complaint and Voluntary Stipulation of Dismissal of the County of Galveston (Docket Entry No. 9). Plaintiff's First Amended Complaint explained that

> [t]his amended complaint is filed in order to dismiss one Defendant, County of Galveston, Texas, and to modify the complaint against Larry Williams to reflect that the complaint is brought against him in his official capacity as opposed to his individual capacity, and to bring the State of Texas into the lawsuit as an entity.[1]

Like her Original Complaint, plaintiff's first amended complaint alleged claims for sexual harassment and violation of rights guaranteed by the Fourteenth Amendment to the United States Constitution, and sought compensatory damages, declaratory judgment, and implementation of a policy designed to protect female

---

[1]Plaintiff, Dana Alegria's, First Amended Complaint and Voluntary Stipulation of Dismissal of the County of Galveston, Docket Entry No. 9, p. 1.

probationers, attorney's fees, costs of court, and all legal and equitable relief to which she might be deemed entitled.

On September 7, 2006, the court dismissed the plaintiff's § 1983 claims for compensatory damages against both the State of Texas and Larry Williams in his official capacity, but declined to dismiss any § 1983 claims for prospective injunctive relief that the plaintiff might have asserted or attempted to assert against Williams.[2]  On December 1, 2006, the court granted plaintiff's motion to amend (Docket Entry No. 24), and on December 4, 2006, plaintiff filed her Third Amended Complaint (Docket Entry No. 25). Plaintiff's third amended complaint asserted Title IX and § 1983 claims against the State of Texas and against Kelly and Williams in both their official and individual (i.e., personal) capacities.  On September 11, 2007, the court dismissed the § 1983 claims asserted against Kelly in his individual (i.e., personal) capacity after concluding that he was entitled to qualified immunity for those claims, but declined to dismiss the Title IX claims asserted against the State of Texas and/or the individual defendants in either their official or their personal capacities, and ordered the plaintiff to show cause "why the court should not sua sponte grant summary judgment or dismiss all of the remaining claims except for the § 1983 claim for compensatory damages asserted against Williams

---

[2]See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Docket Entry No. 15, at pp. 2-4.

in his individual [i.e., personal] capacity."[3]  On September 28, 2007, the plaintiff filed Plaintiff, Dana Alegria's, Pleading in Response to Court's Order to Show Cause Showing Factual and Legal Basis for Title IX Claims (Docket Entry No. 35), in which she contested the court's proposal to grant summary judgment on her Title IX claims but stated that she was not seeking prospective injunctive relief pursuant to § 1983.  On October 22, 2007, plaintiff filed a second response to the court's show cause order, which appears to have duplicated the first response (Docket Entry No. 36).  On November 2, 2007, the court <u>sua sponte</u> granted the defendants summary judgment on the Title IX claims that plaintiff had asserted against them, and construed plaintiff's statement that she was not seeking prospective injunctive relief as a statement that she had abandoned any claim that she had asserted or attempted to assert for prospective injunctive relief pursuant to 42 U.S.C. § 1983.[4]

## II.  <u>Motion for Reconsideration</u>

Plaintiff moves the court to reconsider its November 2, 2007, Memorandum Opinion and Order granting summary judgment to the defendants on her Title IX claims because new evidence developed during the deposition of Rebecca Alaniz taken on December 18, 2007, raises a genuine issue of material fact for trial.

---

[3]Memorandum Opinion and Order, Docket Entry No. 34, p. 38.

[4]Memorandum Opinion and Order, Docket Entry No. 37, pp. 13-38.

**A.    Standard of Review**

The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration," and plaintiff does not address the standard of review this court should apply with respect to the pending motion to reconsider.   In this circuit motions to reconsider grants of summary judgment are treated as either a motion to alter or amend judgment under Rule 59(e) if filed within ten days of the judgment at issue, or a motion for relief from judgment or order under Rule 60(b) if filed more than ten days after the judgment at issue.   See Harcon Barge Co., Inc. v. D&G Boat Rentals, Inc., 784 F.2d 665, 667 (5th Cir.) (en banc), cert. denied sub nom. Southern Pacific Transportation Co. v. Harcon Barge Co., 107 S.Ct. 398 (1986).   Courts considering such motions are duty-bound to "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts."   Edward H. Bohlin Co., Inc. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (citing Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), cert. denied, 114 S.Ct. 171 (1993), overruled on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994)).   When additional evidence not part of the summary judgment record is submitted in support of a motion for reconsideration, courts consider the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case,

-5-

whether the evidence was available before the party responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.  See Lavespere, 910 F.2d at 174.  "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." Templet v. HydroChem, Inc., 367 F.3d 473, 479 (5th Cir.), cert. denied sub nom. Irvin v. Hydrochem, Inc., 125 S.Ct. 411 (2004).

**B.   Analysis**

In support of her motion to reconsider plaintiff has submitted the December 18, 2007, deposition testimony of Rebecca Alaniz, which she argues contradicts the following excerpt from the court's November 2, 2007, Memorandum Opinion and Order:

> the undisputed evidence is that when Sanchez learned of Alaniz's complaint she did not fail to take any action but, instead, met with Alaniz to investigate the complaint.  When Alaniz refused to verify the complaint to Sanchez, Sanchez took no further action.  Although Sanchez's response to Alaniz's complaint did not succeed at correcting Williams' misconduct, in light of Alaniz's refusal to verify the complaint and absent any evidence that Sanchez had received any other complaints about Williams' misconduct, the court is not persuaded that Sanchez's response to Alaniz's complaint was unreasonable under the known circumstances.[5]

During her December 18, 2007, deposition Alaniz testified that she had been a probationer under Williams' supervision and that while she was being supervised by Williams, Williams subjected her

---

[5]Memorandum Opinion and Order, Docket Entry No. 37, p. 26.

to inappropriate sexual conduct that was both verbal and physical in nature.  Alaniz testified that she was eventually transferred to the supervision of another probation officer, Ms. Henry, and that during her first meeting with Henry she reported Williams' abusive conduct.  When told that the state had submitted evidence showing that Henry reported her complaint about Williams to her supervisor, Magdalene Sanchez, and that Sanchez had attempted to meet with her (i.e., with Alaniz) to investigate the complaint but that she (i.e., Alaniz) had refused to verify the complaint, Alaniz testified that the state's evidence was false because after she complained to Henry about Williams no one ever contacted her to investigate her complaint, and she never refused to talk to anyone about it.  Alaniz also testified that once she attempted to contact the district attorney's office about Williams but was never called back.[6]

1.   Applicable Law

Plaintiff filed her motion for reconsideration on January 4, 2008, over two months after November 2, 2007, the date on which the court granted the summary judgment at issue.  Because plaintiff's motion was filed more than ten days after the judgment she seeks to have reconsidered, her motion must be considered under Rule 60(b),

---

[6]Oral Deposition of Rebecca Alaniz, December 18, 2007, Exhibit No. 20 attached to Plaintiff, Dana Alegria's, Motion for Reconsideration of the Memorandum Opinion and Order, Docket Entry No. 41, pp. 6-13.

which allows courts to reopen cases when the party seeking relief from judgment demonstrates

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . ., or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). <u>See</u> <u>Harcon Barge</u>, 784 F.2d at 667; <u>Lavespere</u>, 910 F.2d at 174.

Plaintiff offers Alaniz's testimony as new evidence because it was developed during a deposition taken on December 18, 2007, over six weeks after the summary judgment ruling she seeks to have reconsidered. Since plaintiff's motion for reconsideration is based on the submission of new evidence, the court concludes that it must be considered under Rule 60(b)(2). To prevail under Rule 60(b)(2), "a movant must demonstrate: (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." <u>Goldstein v. MCI WorldCom</u>, 340 F.3d 238, 257 (5th Cir. 2003). The movant must show that she exercised due diligence in seeking the relevant evidence because the "[u]nexcused failure to produce the relevant evidence at the original trial can be sufficient without more to warrant denial of a [R]ule 60(b) motion." <u>Provident Life & Accident Ins. Co. v. Goel</u>, 274 F.3d 984,

999 (5th Cir. 2001).   "A judgment will not be reopened if the evidence is merely cumulative or impeaching and would not have changed the result."   <u>Hesling v. CSX Transp. Inc.</u>, 396 F.3d 632, 640 (5th Cir. 2005).

     2.   <u>Plaintiff's New Evidence</u>

     (a)  Due Diligence

Plaintiff has failed either to argue or to show that with due diligence the evidence developed during the Alaniz deposition taken on December 18, 2007, could not have been obtained before the date on which the court issued its summary judgment, or in time to move for reconsideration under Rule 59(b).   Moreover, plaintiff has failed to offer any explanation for her failure to discover the Alaniz evidence sooner.

Attached to the response to the court's order to show cause that plaintiff filed on September 28, 2007, is a February 7, 2006, letter from Alaniz's probation officer, Henry, to Kelly that not only identifies Alaniz but also recounts the complaint about Williams that Alaniz made to her.[7]   Since plaintiff knew that Alaniz had complained about Williams' conduct before the court granted the summary judgment at issue, and yet plaintiff has not offered any explanation for why she failed to develop the Alaniz

_____

[7]See Exhibit 11 attached to Plaintiff, Dana Alegria's, Pleading in Response to Court's Order to Show Cause Showing Factual and Legal Basis for Title IX Claims, Docket Entry No. 35.

evidence earlier, the court concludes that plaintiff's motion for
reconsideration based on that evidence should be denied.  <u>See</u>
<u>Goel</u>, 274 F.3d at 999 ("[u]nexcused failure to produce the relevant
evidence at the original trial can be sufficient without more to
warrant denial of a [R]ule 60(b) motion").  Alternatively, the
court concludes that the motion for reconsideration should be
denied because the Alaniz evidence is neither material nor
controlling and would not have produced a different result if
presented before the summary judgment that plaintiff seeks to have
reconsidered was issued.  <u>See</u> <u>Goldstein</u>, 340 F.3d at 257.

   (b)  Material and Controlling

   Plaintiffs seeking to recover damages under Title IX for
sexual harassment must establish that (1) an employee of a federal
funding recipient with supervisory power over the alleged harasser
(2) had actual knowledge of the harassment and (3) responded with
deliberate indifference.  <u>See</u> <u>Gebser v. Lago Vista Indep. Sch.</u>
<u>Dist.</u>, 118 S.Ct. 1989, 1999 (1998).  "[T]o qualify as a supervisory
employee whose knowledge of abusive conduct counts as the [funding
recipient's] knowledge, . . . [an] official must at least serve in
a position with the authority to 'repudiate that conduct *and*
eliminate the [harassment]' on behalf of the [funding recipient]."
<u>Rosa H. v. San Elizaro Indep. Sch. Dist.</u>, 106 F.3d 648, 661
(quoting <u>Nash v. Electrospace System, Inc.</u>, 9 F.3d 401, 404 (5th
Cir. 1993)).  Notice of harassment to employees who have no

authority beyond reporting the misconduct to other employees is insufficient to expose a federal funding recipient to Title IX liability. Id. The actual knowledge requirement is based on the subjective standard that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Id. at 658 (quoting Farmer v. Brennan, 114 S.Ct. 1970 (1994)).

Alaniz testified that she reported Williams' conduct to Henry, but that she never reported it to Henry's supervisor, or to anyone else at the Galveston County Community Service & Corrections Department (GCCS&CD). Although not expressly stated, the gist of plaintiff's argument for reconsideration appears to be that because Henry stated in her letter to Kelly that she reported Alaniz's complaint about Williams to Sanchez, and that Sanchez attempted to investigate the complaint by meeting with Alaniz, Alaniz's testimony that she never met with Sanchez and was not aware that anyone at GCCS&CD ever attempted to investigate her complaint, creates a genuine issue of material fact for trial regarding whether an employee of the GCCS&CD with supervisory power over Williams had actual knowledge that Williams was harassing female probationers and responded with deliberate indifference. The court is not persuaded that Alaniz's testimony is either material, controlling, or capable of creating a genuine issue of material fact for trial because plaintiff has not presented any evidence from which a reasonable fact-finder could conclude that Sanchez had supervisory

authority over Williams or the authority to take any step to stop
Williams' allegedly abusive conduct other than to report it to
Kelly.   Moreover, the court reached the same conclusion in its
November 2, 2007, Memorandum Opinion and Order:

> Assuming without deciding that plaintiff may satisfy
> Gebser's actual notice standard by presenting evidence
> from which a reasonable trier of fact could conclude that
> an appropriate official had actual knowledge of a
> substantial risk of abuse to probationers based on prior
> complaints by others, the court is still not persuaded
> that plaintiff has presented evidence capable of raising
> a genuine issue of material fact for trial.   Although
> plaintiff has presented evidence that in 2003 Ellis-Henry
> communicated Alaniz's complaints about Williams' conduct
> to her supervisor, Sanchez, and has asserted that
> "Sanchez is a person of authority who could have taken
> action on the complaint,"[8] plaintiff has failed to
> present any evidence from which a reasonable fact finder
> could conclude that in 2003 (when Alaniz complained to
> Ellis-Henry) Sanchez had supervisory power over Williams
> . . .   Instead, plaintiff asserts that
>
> > [f]rom the factual record before this Court,
> > Kelley clearly had authority to take
> > corrective measures.   Plaintiff contends that
> > the Supervisor Officer Sanchez once informed
> > about Larry Williams' conduct in 2003 had
> > authority to address the grievance (Alaniz
> > complaint) and institute corrective measures —
> > include reporting to Kelley.   By way of
> > example, a current Community Supervision
> > Supervisor explained that her role is to
> > manage employees, ensure office policy and
> > procedures are followed, to deal with Human
> > Resource issues and to supervise case load
> > management.
> >
> > In the case of Murrell v. School District
> > No. 1, Denver, Colorado, 186 F.3d 1238 (10th
> > Cir. 1999), the Tenth Circuit when addressing

_____

[8]See Plaintiff, Dana Alegria's, Pleading in Response to
Court's Order to Show Cause Showing Factual and Legal Basis for
Title IX Claims, Docket Entry No. 35, p. 12 n.17.

the question of job titles declined to limit
its analysis to a particular job title or
positions (that would constitute the authority
to address the alleged discrimination and to
institute corrective measures).   The Court
explained that "deciding who exercises sub-
stantial control for the purposes of Title IX
liability is necessarily a fact-based
inquiry." *Id.* at 1247.[9]

Plaintiff's argument appears to be that at all times
relevant to this case Kelly possessed the authority to
investigate and correct Williams' conduct, but that as a
supervisor, Sanchez possessed the authority to address
Alaniz's complaint about Williams' misconduct and take
corrective measures by reporting the complaint to Kelly.
However, since the Fifth Circuit has held that notice of
teacher-student harassment to employees who have no
authority beyond reporting the misconduct to other school
district employees is insufficient to expose a federal
funding recipient to Title IX liability, Rosa H., 106
F.3d at 661, and since plaintiff has failed to present
any evidence from which a reasonable fact finder could
conclude that Sanchez possessed any authority beyond the
ability to report Alaniz's complaint to Kelly, the court
is not persuaded that evidence that Ellis-Henry reported
Alaniz's complaint to Sanchez is sufficient to expose the
State of Texas and/or the official capacity defendants to
Title IX liability.[10]

Nor is the court persuaded that Alaniz's testimony that she
reported Williams' conduct to the Galveston County Sheriff's
Department capable of establishing that Kelly and/or the State of
Texas could be held liable to the plaintiff under Title IX because
the plaintiff makes no showing either that the Galveston County
Sheriff's Department is a branch of the Texas Department of
Criminal Justice (i.e., the alleged recipient of federal funds), or

---

[9]Id. at 18 n.20.

[10]Memorandum Opinion and Order, Docket Entry No. 37, pp. 24-25.

-13-

that Alaniz's complaint was made or communicated to a person who had supervisory authority over Williams or anyone else at the GCCS&CD.

Alaniz testified that she complained about Williams' allegedly abusive conduct to her probation officer and to some unidentified employee of the Galveston County Sheriff's Department, but that she never spoke to her probation officer's supervisor, or anyone else of higher authority at the GCCS&CD about Williams' conduct. Alaniz's testimony that she did not complain about Williams' conduct to anyone at GCCS&CD other than her probation officer reinforces the court's conclusion that Kelly and the State of Texas are entitled to summary judgment on the Title IX claims that plaintiff has asserted against them because plaintiff has failed to present evidence capable of raising a genuine issue of material fact regarding whether an employee of the federal funding recipient with supervisory power over the alleged harasser (i.e., Williams) had actual knowledge of the harassment and responded with deliberate indifference. See Gebser, 118 S.Ct. at 1999. See also Rosa H., 106 F.3d at 661 ("[T]o qualify as a supervisory employee whose knowledge of abusive conduct counts as the [funding recipient's] knowledge, . . . [an] official must at least serve in a position with the authority to 'repudiate that conduct and eliminate the [harassment]' on behalf of the [funding recipient]."). Because the court is not persuaded that the Alaniz

-14-

testimony that plaintiff presents in support of her motion for reconsideration is sufficient to raise a genuine issue of material fact for the trial, the court concludes that it is neither material nor controlling and that it would not have produced a different result if submitted before the court issued the summary judgment that plaintiff seeks to have reconsidered.  See <u>Goldstein</u>, 340 F.3d at 257.

**C.   Conclusion**

Because plaintiff has failed to show that with due diligence the new evidence that she has submitted in support of her motion for reconsideration could not have been discovered before the court issued the summary judgment that she seeks to have reconsidered, and because the court concludes that the new evidence is neither material, controlling, nor capable of altering the outcome of the summary judgment, plaintiff's motion for reconsideration will be denied.

**III.   Motion for Default Judgment Against Larry Williams**

Asserting that defendant "Larry Williams has been served and has failed to answer herein and/or respond in all parts (see docket entry 14),"[11] plaintiff moves for default judgment against Williams pursuant to Federal Rule of Civil Procedure 55 and requests a

---

[11]Plaintiff's, Dana Alegria, Motion for Default Judgment Directed Against Larry Williams, Docket Entry No. 40, p. 1.

hearing on damages.  Asserting that the court may not grant default judgment against Williams without differentiating between his personal and official capacities, the Attorney General's office argues that the court should deny plaintiff's motion for default judgment against Williams in his official capacity.

**A.    Standard of Review**

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk shall enter the party's default." Rule 55(b) provides that judgment by default may be entered by the court pursuant to application submitted by a party and that "[t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: . . . (B) determine the amount of damages." Fed. R. Civ. P. 55(b).

**B.    Applicable Law**

Public officials like Williams may be sued pursuant to 42 U.S.C. § 1983 in either their official and/or their personal capacities.  See Hafer v. Melo, 112 S.Ct. 358, 361-63 (1991) (citing Kentucky v. Graham, 105 S.Ct. 3099 (1985)).  As the Supreme Court has explained,

> the distinction between official-capacity suits and personal capacity suits is more than "a mere pleading device." . . . State officers sued for damages in their

-16-

> official capacity are not "persons" for purposes of the
> suit because they assume the identity of the government
> that employs them. . . . By contrast, officers sued in
> their personal capacity come to court as individuals. A
> government official in the role of personal-capacity
> defendant thus fits comfortably within the statutory term
> "person."

Id. at 362. Thus, the real party-in-interest in an official-
capacity suit is the governmental entity and not the named
official. Id. at 361 (citing Graham, 105 S.Ct. at 3105) ("Suits
against state officials in their official capacity . . . should be
treated as suits against the State."). See Bennett v. Pippin, 74
F.3d 578, 584 (5th Cir.), cert. denied, 117 S.Ct. 68 (1996) ("When
Mrs. Bennett sued the Sheriff in his individual and official
capacity, she sued two defendants: the Sheriff and the County.").
See also Turner v. Houma Municipal Fire and Police Civil Service
Board, 229 F.3d 478, 483 (5th Cir. 2000) ("Official-capacity suits
. . . generally represent only another way of pleading an action
against an entity of which an officer is an agent. Accordingly, a
§ 1983 suit naming defendants in only their 'official capacity'
does not involve personal liability to the individual defendant.").

**C. Analysis**

On April 4, 2006, plaintiff filed her Original Complaint,
which named Williams as a defendant "individually and in his
official capacity."[12] On April 4, 2006, the court issued an Order

---

[12]Plaintiff, Dana Alegria's, Original Complaint, Docket Entry
No. 1, p. 1.

-17-

for Conference and Disclosure of Interested Parties that notified plaintiff that

> Fed. R. Civ. P. 4(m) requires defendant(s) to be served within 120 days after the filing of the complaint.  The failure of plaintiff(s) to file proof of service within 120 days after the filing of the complaint may result in dismissal of this action by the court on it[s] own initiative.[13]

The Clerk's docket sheet reflects that a summons was issued as to Larry Williams on April 10, 2006, but contains no indication that Williams was ever served with the summons or the plaintiff's original complaint.  On June 20, 2006, the Attorney General filed an answer on behalf of Larry Williams in his official capacity only,[14] and on June 27, 2006, the Attorney General filed a motion to dismiss on Williams' behalf.[15]

On June 27, 2006, plaintiff filed her First Amended Complaint and Voluntary Stipulation of Dismissal of the County of Galveston (Docket Entry No. 9).  In it she explained that

> [t]his amended complaint is filed in order to dismiss one Defendant, County of Galveston, Texas, and to modify the complaint against Larry Williams to reflect that the

---

[13]Docket Entry No. 2, ¶ 3.

[14]See Defendant's Original Answer and Affirmative Defenses to Plaintiff's Original Complaint, Docket Entry No. 7 ("NOW COMES, Defendant, Larry Williams, in his official capacity only, represented by and through Greg Abbott, Attorney General of the State of Texas . . . and file[s] this its Original Answer and Affirmative Defenses to Plaintiff's Original Complaint.").

[15]See Defendant Larry Williams in His Official Capacity's Motion to Dismiss for Failure to State a Claim on Which Relief Can Be Granted and Brief in Support, Docket Entry No. 8.

complaint is brought against him in his official capacity
as opposed to his individual capacity, and to bring the
State of Texas into the lawsuit as an entity.[16]

On June 29, 2006, the parties filed their Joint Discovery/Case
Management Plan Under Rule 26(f), which stated that "Larry Williams
has not been served."[17]

On July 11, 2006, the Attorney General filed an amended answer
on behalf of "the State of Texas and Larry Williams in his official
capacity."[18]

The Clerk's docket sheet reflects that a second summons was
issued as to Larry Williams on July 24, 2006.  On August 31, 2006,
an executed return of service was filed showing that Larry Williams
was personally served with the summons and complaint on August 22,
2006 (Docket Entry No. 14).

On August 8, 2006, plaintiff filed a motion for leave to file
a third amended complaint.[19]  In the motion plaintiff explained that

_____

[16]Plaintiff, Dana Alegria's, First Amended Complaint and
Voluntary Stipulation of Dismissal of the County of Galveston,
Docket Entry No. 9, p. 1.

[17]Joint Discovery/Case Management Plan Under Rule 26(f) Federal
Rules of Civil Procedure, Docket Entry No. 10, ¶ 6.  The Attorney
General participated in the preparation of the Plan on behalf of
Larry Williams in his official capacity.

[18]Defendants' Original Answer and Affirmative Defenses to
Plaintiff's First Amended Complaint, Docket Entry No. 11, p. 1.

[19]See Plaintiff, Dana Alegria's, Motion for Leave to Amend Her
Complaint to File Plaintiff's Third Amended Complaint, Docket Entry
No. 13.

> [t]his third amended complaint is filed in order to bring
> Eddie Kelly into the proceedings.  Plaintiff's complaint
> asserts a failure to train and/or supervise.  Eddie Kelly
> was Defendant Williams' supervisor; as such, Kelly should
> be a party to this lawsuit.[20]

Plaintiff also explained that "[c]onsultation was attempted with opposing counsel on August 4, 2006, without success.  It should be assumed that counsel for the State opposes the motion in all parts."[21]  Despite plaintiff's statement that she sought to file a third amended complaint only to add Eddie Kelly as a party defendant, the third amended complaint attached to plaintiff's motion added not only Eddie Kelly in both his official and individual capacities, but also Larry Williams in his individual capacity.

On September 7, 2006, the court dismissed the § 1983 claims for compensatory damages that the plaintiff alleged against the State of Texas and Williams in his official capacity, but declined to dismiss any § 1983 claims for prospective injunctive relief that the plaintiff might have asserted or attempted to assert against Williams in his official capacity.[22]

On December 1, 2006, the court signed an order granting plaintiff's "unopposed" motion for leave to amend her complaint,[23]

---

[20]Id. at ¶ 1.

[21]Id. at ¶ 3.

[22]See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Docket Entry No. 15, at pp. 2-4.

[23]See Order, Docket Entry No. 24.

and on December 4, 2006, plaintiff's third amended complaint was filed.[24]  The third amended complaint added Eddie Kelly in both his official and individual capacities and Larry Williams in his individual capacity.[25]  On December 14, 2006, the Attorney General filed an answer to plaintiff's third amended complaint on behalf of Williams in his official capacity.[26]  The clerk's docket sheet does not reflect that the third amended complaint that named Williams in his individual (i.e., personal) capacity was ever served on Williams.

On November 2, 2007, the court entered a Memorandum Opinion and Order (Docket Entry No. 37) in which it sua sponte granted summary judgment on the Title IX and § 1983 claims for prospective injunctive relief that plaintiff had or might have asserted against the State of Texas and against Larry Williams in his official capacity.  At the end of that Memorandum Opinion and Order, the court expressly stated

> [f]or the reasons explained above, the court sua sponte **GRANTS** defendants summary judgment on the Title IX claims alleged against Williams and Kelly in their individual capacities, and the Title IX and § 1983 claims alleged against the State of Texas and against Williams and Kelly in their official capacities.  Since the court has already dismissed the § 1983 claims for monetary damages

---

[24]See Plaintiff, Dana Alegria's, Third Amended Complaint, Docket Entry No. 25.

[25]Id. at 1.

[26]See Defendants' Original Answer and Affirmative Defenses to Plaintiff's Third Amended Complaint, Docket Entry No. 27.

-21-

asserted against the State of Texas and against Kelly and
Williams in their official capacities and against Kelly
in his individual capacity, the only claim remaining in
this action is the § 1983 claim for monetary damages
alleged against Williams in his individual capacity.[27]

The court reached this conclusion without conducting a thorough
review of the procedural history of this case and upon now doing so
realizes that it wrongly concluded that a § 1983 claim for monetary
damages alleged against Williams in his individual (i.e., personal)
capacity remains in this action.

As evidence that default judgment should be entered against
Williams because Williams was personally served with the summons
and complaint in this action but that Williams never answered or
defended the claims asserted against him, plaintiff cites the court
to Docket Entry No. 14.  Docket Entry No. 14 is an executed return
of service showing that Williams was served with summons and
complaint on August 22, 2006.  Although plaintiff's original
complaint alleged claims against Williams in both his official and
personal capacities, the first amended complaint that plaintiff
filed on June 27, 2006, expressly stated that the claims asserted
against Williams were asserted against him in only "his official
capacity as opposed to his individual capacity."[28]   Because

---

[27]Memorandum Opinion and Order, Docket Entry No. 37, pp. 38-39.

[28]Plaintiff, Dana Alegria's, First Amended Complaint and
Voluntary Stipulation of Dismissal of the County of Galveston,
Docket Entry No. 9, p. 1.

plaintiff filed her first amended complaint on June 27, 2006, because the joint discovery/case management plan filed on June 29, 2006, states that Williams had not been served, and because the return of service that plaintiff argues supports her application for default judgment shows that Williams was served with summons and complaint on August 22, 2006, the court concludes that Williams has only been served with plaintiff's first amended complaint, which only alleged claims "against him in his official capacity as opposed to his individual capacity."[29]   Since the clerk's docket sheet demonstrates that plaintiff never served Williams with her third amended complaint in which she again named him as a defendant in his personal capacity, Williams had no cause to answer or otherwise defend himself in his personal capacity.

Federal Rule of Civil Procedure 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . .

Rule 4(m) authorizes a district court to dismiss a complaint if not timely served, unless good cause is shown for the failure. Plaintiff has neither shown that Williams was ever served with a

---

[29]Id.

complaint that alleged claims against him is individual (i.e., personal) capacity, nor shown good cause for her failure to do so. Moreover, the Order for Conference and Disclosure of Interested Parties issued the day this action was filed notified plaintiff that Rule 4(m) requires defendants to be served within 120 days after the filing of the complaint, and that failure to effect proof of service within 120 days after filing of the complaint may result in dismissal of this action by the court on its own initiative.[30] Because the court has already granted summary judgment to Williams on the claims that plaintiff alleged against him in his official capacity, and because plaintiff has failed to demonstrate that Williams was ever served with a complaint naming him as a defendant in his personal capacity, the court concludes that claims asserted against Williams in his individual (i.e., personal) capacity should be dismissed without prejudice for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m), and that plaintiff is unable to demonstrate default judgment should be entered against Williams for any claims that the plaintiff attempted to allege against him in his individual (i.e., personal) capacity.

### IV.  Conclusions and Order

For the reasons explained above, Plaintiff, Dana Alegria's, Motion for Reconsideration of the Memorandum Opinion and Order

---

[30]Order for Conference and Disclosure of Interested Parties, Docket Entry No. 2, ¶ 3.

filed on November 2, 2007 (Docket Entry No. 41), is **DENIED,** and Plaintiff's Motion for Default Judgment Directed Against Larry Williams (Docket Entry No. 40) is **DENIED.**[31]

    **SIGNED** at Houston, Texas, on this the 7th day of March, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[31]The court has allowed the plaintiff extraordinary leeway in submitting numerous briefs and other written materials.  As the length of this Memorandum Opinion and Order and the length of the two previous Memorandum Opinions and Orders indicate (Docket Entry Nos. 34 and 37), the court has expended considerable time reading the plaintiff's papers and performing independent research to be as fully informed as possible when addressing her arguments.  While, because of the volume and manner in which information has been presented it is possible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this or either of the other Memorandum Opinions and Orders reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the plaintiff from seeking reconsideration based on arguments that she has previously raised or that she could have raised.